## THE ALRISA.

### THE SAM CRAIG.

#### No. 101.

District Court, W. D. Pennsylvania.
April 12, 1948.

Campbell, Houck & Thomas and Harland I. Casteel, all of Pittsburgh, Pa., for libellant.

Dalzell, McFall, Pringle & Bredin, and John R. Bredin, all of Pittsburgh, Pa., for claimant Dravo Corp.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

#### Findings of Fact

1. The libellant, Alex J. Slepski, was on November 14, 1946, the owner of a diesel propelled motor towboat known as The Alrisa.

2. The steam towboat Sam Craig, on November 14, 1946, was in the possession of Dravo Corporation, and was being operated by it as bailee thereof.

3. On November 14, 1946, The Alrisa was propelling a tank barge 135 feet long and 26 feet wide, loaded with gasoline, up the Monongahela River, and approximately at 10:45 P. M. was beneath the Donora-Webster Bridge.

4. At the same time The Sam Craig, propelling six steel barges, loaded with coal and coke, down the Monongahela River, was approximately one-half mile above the Donora-Webster Bridge. These barges were each 175 feet long, and arranged in a double row of three on each side. The Sam Craig was 178 feet long.

5. At about 1,000 feet above the Donora-Webster Bridge the port end of the front barge of The Sam Craig collided with the port side of The Alrisa about 10 feet from its stern, and as a result of the collision The Alrisa later sank in the Monongahela River.

6. Prior to the collision both The Alrisa and The Sam Craig were close to the middle line of the river. This position was dangerous to The Alrisa because its lack of power and speed endangered it in attempting to avoid towboats coming down the river. It was also dangerous to The Sam Craig because the ordinary course of descending boats propelling tows was about 150 feet nearer the eastern bank of the river.

7. The width of the river at the point of collision was about 550 to 600 feet.

8. At the time of the collision visibility was restricted to about one-half mile by haze or smoke.

9. When in the immediate neighborhood of the Donora-Webster Bridge The Alrisa flashed a light signal which was answered by a flash from The Sam Craig. Thereafter The Alrisa gave no signal by whistle or light. When about 1500 feet from it the pilot of The Alrisa first saw The Sam Craig. Had he used due care that vessel could have been seen at a distance of at least 4,000 feet.

10. When approximately 1500 feet from The Alrisa the pilot of The Sam Craig sounded one blast of a whistle to indicate passage to port. Shortly thereafter he gave four short blasts as a danger signal, and after a short interval the collision followed. When the danger signal was given The Sam Craig was at once put into full speed in reverse.

11. After the collision The Alrisa floated to the rear of The Sam Craig and was lashed to it. An attempt to keep it afloat by the use of a siphon was made by members of both crews, but was unsuccessful.

12. After the collision The Alrisa was moved by The Sam Craig from the approximate point of the impact to a point nearer the west bank of the river than it had been at the collision.

13. By direction of the proper authority The Alrisa, after the collision was removed from the channel of the river by the libellant at a cost of $2,000.00. Its salvage value after being raised was $500.00.

14. The arrest of the vessel Sam Craig has been waived, and Dravo Corporation, the intervenor, with Fidelity & Deposit Company of Maryland as surety, has by its bond agreed that if the libellant recover, a decree may be entered against it for an amount not to exceed the agreed amount of the bond.

15. Prior to their approach to the scene of the collision both The Alrisa and The Sam Craig had running lights on the front of their respective tows.

16. The fair market value of The Alrisa at the time of the collision was $6,500.00.

### Conclusions of Law

I. The matters involved are within the admiralty and maritime jurisdiction of this court.

II. The collision involved herein resulted in part from the negligence of both the libellant and respondent.

III. The libellant is entitled to a decree for one-half of the market value of his motor boat, The Alrisa, less the amount of salvage, plus one-half of the expense of removing it from the channel of the river.

### Discussion

On November 14, 1946, the motor towboat Alrisa and the steamboat Sam Craig collided a short distance above the Donora-Webster Bridge in the Monongahela River, and as a result The Alrisa was sunk. The above entitled libel followed. When the collision occurred The Sam Craig was under charter by the Dravo Corporation, which has intervened, filed a bond to pay all damages awarded by final decree, and has secured the release of The Craig.

The Sam Craig was a steamboat 178 feet long and, at the time of the collision, had a tow of six loaded barges ahead of it, arranged in three lengths two barges wide. The total length of the steamboat and her tow was 703 feet. The Alrisa was a gasoline motor towboat 65 feet long and 14 feet wide, and was pushing one gasoline barge. The Sam Craig was going downstream and The Alrisa upstream.

The testimony of the occupants of both boats was highly conflicting and a reasonable theory of the cause of the collision must be formed from their incidental and accidental statements. From the testimony it appears that The Craig was closer to the middle channel of the river than was usually occupied by steamboats coming down the river. On the other hand, The Alrisa was in the channel and not so close to the west side as claimed by libellant's witnesses. Neither vessel could be easily maneuvered, The Craig by reason of its long and heavy tow, and The Alrisa because of its condition and lack of motive power. The visibility on the night of the accident in the adjoining locality was "fair", that is, something about one-half mile.

As The Alrisa reached the Donora-Webster Bridge, it flashed a light possibly to indicate an intention to pass on the port side, and after that gave no sign by either light or whistle. It is questionable if it had a whistle as part of its equipment. Why the light was displayed does not clearly appear, because the only witness called by the libellant who saw the flash, was the libellant himself, and he asserted that he had not seen The Craig until it was 1500 feet from his boat. It does appear that one George Logsdon was pilot of The Alrisa when the light was flashed, but immediately thereafter the libellant assumed the wheel owing to some difference of opinion between Logsdon and himself. Logsdon was subpoenaed by the libellant and would seem to be an important witness. He was present during the morning session of the court, but thereafter did

not appear. Counsel for the libellant did not ask for an attachment to secure his presence.

Captain Jacob D. Woods was pilot on The Craig when the Alrisa came into view and flashed its light. The light, he asserted, was very weak, but he replied by flashing his own strong light. Later, he asserts, seeing that the motor boat was approaching directly towards his tow, he whistled once to indicate his intention to pass to port. Seeing that the vessel did not change its course, he turned on his search-lights and gave four short blasts as a danger signal, and reversed the course of The Craig. The Alrisa then was attempting to pass on the port side, but was unable to clear The Craig tow, and was struck by the port front of the tow. Just before the collision The Craig reversed its engine, and after it The Alrisa floated to the rear of The Craig, and was lashed to it. In the meantime The Craig had moved it from the main channel to a shallow part of the west side of the river. An attempt was made to siphon The Alrisa, but without success, and it sank about forty-five minutes after the collision.

As the court views the collision, both vessels were, each in part, to blame for it. The Sam Craig because it had not kept the ordinary course followed by river boats with tows descending the river, and also because it unduly relied upon the ability of The Alrisa to change its course in time; and The Alrisa because of its failure to keep a proper lookout and to give due signals, and also because of lack of power and inability to move quickly it was wrongfully in a dangerous part of the channel of the river.

The Alrisa was removed from the river at the cost of $2,000.00 by the libellant, and the salvage value was $500.00. The testimony as to the market value of the boat varied widely. Upon consideration of it the court is of opinion that such value should be fixed at $6,500.00. A decree will be filed for a judgment against Dravo Corporation, the intervenor, for one-half of this amount, less $500.00 recovered value, plus one-half of the cost of removal of the boat from the river, that is in the sum of $4,000.00.